## In re COVENTRY EVANS FURNITURE CO.

(District Court, N. D. New York. January 20, 1909.)

1. BANKRUPTCY (§ 330*)—CLAIMS—PROOF—CONSIDERATION.
     Under Bankr. Act July 1, 1898, c. 541, § 57a, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), relating to proof of claims against a bankrupt's estate, whether the claim consists of a note or instrument in writing or on account or for money loaned, the proof must state the consideration and

give facts which will enable the trustee and creditors to ascertain the adequacy thereof and the justice and legality of the claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 519; Dec. Dig. § 330.*]

2. BANKRUPTCY (§ 340*)—PROOF OF CLAIM—EFFECT.

Proof of claim in bankruptcy which complies with Bankr. Act July 1, 1898, c. 541, § 57, 30 Stat. 560, 561 (U. S. Comp. St. 1901, p. 3443), prescribing the requisites of such proof, establishes the claim and entitles it to allowance in the first instance, shifting the burden of overthrowing it on the trustee when appointed, and on the creditors of the bankrupt if they contest.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

3. BANKRUPTCY (§ 330*)—PROOF OF CLAIMS—ALLOWANCE.

If proof of claim against a bankrupt's estate does not comply with Bankr. Act July 1, 1898, c. 541, § 57, 30 Stat. 560, 561 (U. S. Comp. St. 1901, p. 3443), prescribing the requisites thereof, it is not entitled to allowance, and, if allowed, the trustee, when appointed, may have it expunged, unless it is corrected by amendment or established by proof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 519; Dec. Dig. § 330.*]

4. BANKRUPTCY (§ 330*)—CLAIM—PROOF—"THE CONSIDERATION."

Proof of claim against a bankrupt's estate, reciting generally that there was a consideration for the debt, does not comply with Bankr. Act July 1, 1898, c. 541, § 57a, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), requiring that the proof must state "the consideration."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 519; Dec. Dig. § 330.*]

5. BANKRUPTCY (§ 330*)—CLAIMS—"PROVED."

A claim against a bankrupt is "proved" and entitled to allowance only when it is properly verified and gives "the consideration" therefor and contains the other statements required by Bankr. Act July 1, 1898, c. 541, § 57a, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 519; Dec. Dig. § 330.*

For other definitions, see Words and Phrases, vol. 6, p. 5747.]

6. BANKRUPTCY (§ 333*)—CLAIMS—PROOF.

Proof of claim against a bankrupt's estate, based on a note alleged to have been executed by the bankrupt to which the original note was attached, reciting that it was given "for value received," did not state the consideration for the note as required by Bankr. Act July 1, 1898, c. 541, § 57a, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), and was therefore insufficient.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 519; Dec. Dig. § 333.*]

7. CORPORATIONS (§ 422*)—OFFICERS—DECLARATIONS—ADMISSIONS.

The secretary of a corporation could not bind it by declarations or admissions unless they accompanied the doing of some authorized act.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1689; Dec. Dig. § 422.*]

8. EVIDENCE (§ 355*)—DOCUMENTARY EVIDENCE—STATEMENT OF ACCOUNT.

A written statement purporting to show an account of indebtedness by a bankrupt corporation to its president, containing unsworn statements of the corporation's secretary and referring to books and letters not in evidence, was incompetent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1484; Dec. Dig. § 355.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. BANKRUPTCY (§ 330*)—CLAIMS—PROOF—ARGUMENT—UNSWORN STATEMENT.

A written statement of account, not based on the evidence in the case, but on letters and books not proved and unsworn statements of the bankrupt corporation's secretary not shown to have been made when he was transacting the business to which the statements related, could not be considered as a legitimate argument in support of the claim in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 330.*]

10. BANKRUPTCY (§ 340*)—CLAIMS—ALLOWANCE—EVIDENCE.

Evidence *held* insufficient to support the allowance of a claim against a bankrupt corporation for an indebtedness due its president.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527;. Dec. Dig. § 340.*]

Review of decision of referee refusing to disallow and expunge from the list of claims proved and allowed the claim of $7,329.90 and interest thereon, which claim was originally presented by Charles W. Darling, but which now belongs to the Citizens' Trust Company of Utica, N. Y., executor of the last will and testament of said Darling, he having died during the pendency of this proceeding.

Van Auken & Rice, for claimant.
Grant & Wager, for trustee.

RAY, District Judge. The Coventry Evans Furniture Company was a corporation, of which Charles W. Darling was president. The claim in question was duly signed by Charles W. Darling, and verified by him February 4, 1905, and filed with the referee in bankruptcy February 28, 1905. The claim was in the usual form, and states that the claimant, Charles W. Darling, "made oath and says that the Coventry Evans Furniture Company, the person against whom a petition for adjudication of bankruptcy has been filed, was at and before the filing of said petition, and still is, justly and truly indebted to said deponent in the sum of seven thousand three hundred and twenty-nine and $^{90}/_{100}$ ($7,329.90) dollars; that the consideration of said debt is as follows: A promissory note of said Coventry Evans Furniture Company to deponent's order for the sum of $7,151.13, dated September 2, 1904, and interest thereon for five months from date; that no part of said debt has been paid; that there are no offsets or counterclaims to the same"; and the claim then states in the usual form that no security has been given or received therefor. The original note accompanied the claim, and reads as follows:

"Utica, N. Y., Sept. 2, 1904.·　　　　　　　, 　Due ———.

"Three months after date we promise to pay to the order of Gen. C. W. Darling ($7,151.13) seven thousand one hundred fifty-one $^{13}/_{100}$ dollars, for value received, at Citizens' Trust Company of Utica, N. Y.

"No. ———.　　　　　　　The Coventry Evans Furniture Co.

"Chas. J. Breen, Treas."

The claim having been filed and allowed, the trustee when appointed filed a petition asking that the same be expunged and disallowed. Evidence was taken, and the referee refused to disallow or expunge the claim, and thereupon a petition for review was filed, and the mat-

ter has been certified to this court for its determination as to the validity of this claim.

The trustee says that the claim was insufficient, in that the claim was in fact upon the note and that the claim failed to state the consideration for the note. The trustee further says that under the proofs no valid consideration has been shown, and that it affirmatively appears that the note was not properly executed so as to bind the company, not having been signed by the treasurer thereof, but by another member of the firm, John A. Breen, who signed the treasurer's name thereto. The trustee contends that the power to sign notes could not be delegated to another person, inasmuch as the by-laws require that notes be signed by the secretary and treasurer and countersigned by the president or vice president.

Section 4 of article 37 of the by-laws of the bankrupt company reads as follows:

"The secretary and treasurer shall have the care and custody of all the funds and moneys of the corporation, and deposit same in the name of the corporation, in such bank or banks as the directors may elect. He shall sign all checks, drafts, notes and orders for the payment of money, which shall be countersigned by the president or vice president."

Subsequently, at a meeting of the board of directors, the following resolution was unanimously adopted, viz.:

"Resolved, that Jeremiah C. Breen and John A. Breen be, and they are, hereby authorized to sign the name of Charles J. Breen as treasurer of this company to any and all checks, notes, drafts, bills of exchange, promissory notes, made, executed, and issued for or on behalf of this company with a like effect as if the same were made, executed, or issued by said treasurer."

This resolution was adopted April 16, 1902, and at a meeting of the board of directors held January 19, 1903, the following resolution was unanimously adopted:

"Motion made by Jeremiah C. Breen and seconded by John A. Breen that in the absence of the treasurer, Charles J. Breen, that Jeremiah C. Breen and John A. Breen have power to sign his name same as previous year."

At the time the note was executed and signed, September 2, 1904, the secretary and treasurer, Charles J. Breen, was absent from the store which was the place of business of the company, and the note was signed in the form mentioned by said John A. Breen, who was in fact the secretary of the company. It was not countersigned by either the president or vice president of the company. There is no proof whatever as to the circumstances attending the signing of the note. It was produced by Darling when he filed his proof of claim, and by the claimant on the hearing. Possession of the note was evidence of its delivery, and it recites that it was given for value received. The evidence is all-sufficient to show that the note was signed by the person stated under the authority stated, and that it was delivered to Darling.

On the hearing held on the application to expunge and disallow, the claimant asked to amend his claim, but the record does not show what disposition was made of the application. The claimant gave some evidence of a consideration for the note, but same was all given under objection, and the competency of the evidence was challenged, not,

however, on the ground that the claimant did not have the right to show consideration, but on the ground that the evidence offered and given was incompetent and improper.

John A. Breen, secretary of the company, was sworn on the hearing, and testified that Charles J. Breen was the treasurer, but that he, John A. Breen, always did the signing, as the treasurer was not there. John A. Breen testified that a cashbook, journal, a ledger, daybook, and billbook were kept by the company, and that they were present in court; also that he was familiar with the books and with the manner of bookkeeping employed by the company, and that the company employed a regular bookkeeper. John A. Breen also testified that Charles W. Darling had transactions with the company involving money considerations or other property or things of value, and that it appeared from the cashbook of the company that the first transaction was April 11, 1902. The witness also testified that he could not recall from personal knowledge what happened in relation to the dealings of the company with Darling. He said, "I can tell what is on the books exactly." The following question was then asked: "By referring to the books and refreshing your memory, please state what happened on the date mentioned as shown by the books." This was objected to; that the witness could not state what the books show, and as incompetent and immaterial. The witness then said, "I can't recall four years back any more than you can." The objection was then overruled. The referee then said, "Witness will go on and tell what is in the book without your dictating to him." The claimant's attorney then said, "Proceed, Mr. Breen." The witness then said, "April 11, 1902, bills payable, Charles W. Darling, one thousand dollars." The following then appears in the evidence:

"Q. On that date does it appear that the cash account was charged with one thousand dollars? Mr. Grant: We object; the books show for themselves. (Objection overruled. Exception.) A. The cash account shows that we received one thousand dollars. Q. When was the next transaction, Mr. Breen, if any? I will offer this page 6 in evidence. Mr. Grant: We object to that as incompetent and immaterial and not proven."

The objection was overruled and exception taken, and page 6 of the cashbook was received in evidence. The witness then testified that he had no recollection of the transaction in regard to the $1,000 except the entry in the book. The witness was then asked if there was any entry on the billbook relating to the transaction. Objection was taken that the billbook was the best evidence, and the witness said, "It appears April 10, 1902." The entries in the billbook were then offered in evidence, objected to as incompetent and immaterial, and that the book had not been properly proven. The objection was overruled, and the pages referred to received in evidence. All the evidence in regard to the entries in the books was taken under the same objections. The witness then testified that under date August 20, 1903, there was an entry in the cashbook, "bills payable, General C. W. Darling, three hundred dollars." The page was put in evidence. The witness then testified that the next entry was September 8, 1903, "General Darling, one month's note, three hundred dollars." The witness then testified: "These are all items of cash received? A. Yes,

It was cash from a note. We gave him our note and he gave us the cash." The witness then testified from the books that the next transaction was October 15, 1903, General Darling, three months' note, $300, and October 19th, bills payable, General Darling, $350. "We received that from him." And October 21st, "Bills payable, General Darling, three months' note, five hundred dollars." The witness also testified from the books that October 20th the company paid Darling $30 interest, and the witness said he was trying to tell it just as it was on the book. The witness also testified to three other items of bills payable, General C. W. Darling, $300 each, and one of $50, but it is evident that he was giving it all from the book and not from memory. The witness gave no explanation other than this as to the giving of the note in question, and gave no evidence that the note in question was made up of the smaller notes which he referred to as appearing on the book. He gave no evidence showing or tending to show that the small notes were or were not paid, or that they were or were not included in the large note in question here.

At the next hearing, Edward C. Rice, one of the attorneys for the claimant, testified that, since the last meeting at which evidence was taken:

"I have prepared a statement in detail showing the items with reference to the books of the bankrupt making up this claim, and this is the statement which has just been referred to by counsel. References in the statement from the books of the bankrupt and in the references made in the statement have been duly verified by me to the same, are in all respects true and correct as shown by the books and references made in the statement. In the preparation of this statement I had the books of the bankrupt, and in connection with the preparation of the statement I examined whatever books and papers in the possession of the trustee I deemed would be likely to throw any light on the transaction of the claimant and bankrupt. As I have made up the claim, the total amounts to $7,151.83, which is just 70 cents more than the face of the note. This little difference I can't account for, except that it is in some computation of interest."

Counsel for the claimant then offered the written statement and paper in evidence in support of the claim. Counsel for the trustee objected to the introduction of the paper as in no way connected with the original proof of claim, and objected to the use of the books and the entries made therein on the ground that the claimant was the president of the corporation and had control of the books, and that same were kept under his direction, and that entries made therein could not be used as admissions against the trustee and in favor of the claimant, the president of the corporation, and that claimant could not use the entries in the books kept by himself or under his control as president as admissions of indebtedness due himself; also that the books had not been proved; also that the books in no way referred to the note set out in the original proof of claim, and that the entries in the books are not shown to be in any way connected with the note in question; also that the admissions of the bankrupt corporation are not competent against the trustee, and that the witness did not make the entries in the books, and was not competent to testify concerning them, and that the books were incompetent and immaterial. The objections were overruled, and the statement prepared by Mr. Rice and referred to above was received in evidence.

On cross-examination the witness Rice testified that he did not find mentioned or entered in the books of the bankrupt the note in question here, and that there was no journal entry of the transaction. Also, that all the notes mentioned and contained in the statement put in evidence had been canceled, and were found in the possession of the trustee.

The theory of the claimant is that, taking the books of the bankrupt concern kept by it and the entries therein contained as to transactions between the company and C. W. Darling, such books showed notes owing to Darling from the company which, with interest, aggregated, deducting payments credited on the books, the exact amount of the note put in evidence and which is the foundation of this claim. The contention is that the books, without proof that they were correctly kept or that the entries were correct, show or are admissions by the company that it owed Darling at different times certain notes given for money loaned. These notes were not put in evidence. They were all canceled and in possession of the trustee, and presumably in possession of the company when the trustee was appointed and took possession.

The claimant contends that the fair inference is, and that the court is justified in drawing the inference that, these smaller notes were figured up, deducting payments, and the amount thereof included in this large note held by Darling at the time of his death and presented with his proof of claim. The only ground for this inference is that the smaller notes with interest, deducting payments, amount to the sum set forth in the larger note which is the basis of this claim.

The claim filed is a mere statement that the company is indebted to Darling in the sum of $7,329.90, without any information as to the basis of such indebtedness except that the consideration for such debt is a promissory note of the company to Darling's order for $7,151.13, giving date. The consideration of the note is not stated.

That this proof of claim was a compliance with section 57a of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) is not seriously contended. If the claim was on the note, an instrument in writing, evidence of indebtedness, the section requires that the consideration for the note be stated. If a note is given for property, or money loaned or advanced, or for work, labor, and services, etc., as the case may be, the proof of claim must so state and give facts in regard thereto which will enable the trustee and creditors to investigate and ascertain the consideration and justice of the claim. If the claim is for a debt for work, etc., or money loaned, or property sold, etc., and no note has been given, the proof of claim should state the consideration and give facts which will enable the trustee and creditors to ascertain the adequacy of the consideration and the justice and legality of the claim. Whether the claim be on a promissory note, other instrument in writing, or on an account, or for money loaned, etc., the proof of claim must state "the consideration" for the debt. A proof of claim which complies with the requirements of section 57 establishes the claim, entitles it to allowance in the first instance, and throws the burden of overthrowing it on the

trustee when appointed, and on the creditors of the bankrupt if they would contest. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 581, and cases there cited. If it fails to do this, it is not entitled to allowance, and, if allowed, the trustee when appointed may have it disallowed and expunged, unless it is corrected by amendment or established by proof. The proof of claim must set forth "the consideration," not a general statement that there was a consideration. The claim is "proved" and entitled to allowance only when it is properly verified and gives "the consideration" therefor and contains the other statements required. It is not sufficient to say that the bankrupt is indebted to claimant in a certain sum, and then say that the consideration for the debt is a written promise to pay it reciting "for value received." True, this written promise also acknowledges a consideration for the promise, but it does not give the consideration as required by section 57a. In Whitney v. Dresser, supra, the claim set forth the consideration with great particularity. In re Stevens et al. (D. C.) 5 Am. Bankr. Rep. 806, 107 Fed. 243, where the claim was founded on notes, indorsements, etc., Wheeler, D. J., said:

"The requirement by Bankr. Act, §§ 57a, 57b, of a statement of the consideration and payments, is of more than general allegations in these respects, which might be sufficient in a declaration against the bankrupt upon these causes of action, and extends to the particulars of each, for the information of the trustee and those interested in the estate, but not beyond what relates to the claim as it accrued to the claimant."

In Re Stevens et al. (D. C.) 104 Fed. 325, it was held:

"The amount advanced upon each note is the consideration of that note, and that consideration is by law expressly required to be stated in the proof of claim, which includes to whom, and when, it moved."

Also, "for each of these several necessary requirements the objections must be sustained." See, also, Blue Ridge Packing Co. (D. C.) 11 Am. Bankr. Rep. 36, 125 Fed. 619; In re Scott, 1 Am. Bankr. Rep. 553, 93 Fed. 418.

If the consideration for the note in question here was other notes of the company, such notes should have been alleged, with the consideration therefor, so as to show they were not mere promises without consideration. This claim of Darling, on its face, failed to show a valid claim against the bankrupt, and this fact the claimant recognized, and he sought to show, and was allowed to show, if he could, a valid consideration for the note or an indebtedness of the corporation to Darling for which the note was gvien. This the claimant undertook to do by the books of the company. John A. Breen, who signed the name of the treasurer to the note in question, sworn as a witness, said he was familiar with the books of the company, and that the books produced in court were such books. He testified that they were kept by a bookkeeper. The bookkeeper and the treasurer were not called, neither was their absence explained or accounted for. As to two or three small loans, Breen said the company had the money. But small notes therefor were given, and these were found, with the papers turned over to the trustee, surrendered and canceled. No attempt was made to show when they were canceled or surrendered. John A. Breen, who signed the note in question, gave no information as to

the preparation or drawing of same, or what made up the amount thereof. No attempt was made to show that the entries in the book were correct, or that the president of the company, Darling, the claimant, had nothing to do with keeping the books. Some of the entries were, under objection, put in evidence. Then, without putting the cashbook or other books in evidence as a whole, or those parts of the journal, daybook, and ledger relating to transactions of the company with Darling, the witness Rice made up a statement in writing which, under objection, was put in evidence. It is not accompanied by extracts from the books, and is not confined to information derived from books and papers in evidence. This statement commences:

"Darling's first loan was $1,000, made April 10 or 11, 1902. For this the company gave him its three months' note, which was renewed from time to time, the last renewal being dated October 9, 1903. See original and last renewal. Also see C. B., p. 6; J., p. 3; L., pp. 84 and 100."

The statement then goes on to assert that "the next loan was," etc., giving some 13 such statements, with amounts and dates, and then:

"On December 17, 1903, all the above loans (except the loan of August 19 or 20, 1903, of $300, and the loan of September 8, 1893, $300), aggregating $4.300, were put into one note, dated that day, which see. Also, see J., p. 271; L., pp. 81 and 82; and L., 22."

The statement then goes on to say, "The next loan was $200, made," etc. Then follows two similar statements as to loans, but the last one says, "We have been unable to find any Co. note given for this loan, probably for the reason stated in the next paragraph." The statement contains some nine other allegations that "the next loan was," etc., giving amounts and dates, and then follows this:

"On September 2, 1904, the note of $6,037.70, dated June 30, 1904, and the loan of $400, made July 1, 1904, and the note of $441.35, dated July 7, 1904, together with a loan of $200, which appears on the books under date of September 9, 1904 (see C. B. 134; L. 98), were combined together. There is no journal entry of this transaction, probably due to the fact that there was a change of bookkeepers about this time. John A. Breen is authority for the statement that about September 2, 1904, Mr. Darling was requested by mail to make another loan of $300 or $400, and a new note to combine all the loans theretofore made by him was made out and sent to them on the theory that he would advance the sum requested. He refused to advance more than $200, and thus it was necessary to make out and send him a new note, and a new note was made out and sent to him for $7,151.13, dated September 2, 1904. Upon receipt of this he forwarded his check for $200, and the same appears upon the books as a loan under date of September 9, 1904. This $200 loan (having been combined in the $7,151.13 note) was erroneously credited to his ledger account on page 98. In this connection, see Mr. Darling's letter to John A. Breen, dated September 8, 1904. The note of $7,151.13 was therefore made up as follows:

| | | |
|---|---:|---:|
| Note of June 30, 1904 | $6,037 | 70 |
| Interest to Sept. 2, 1904 | 64 | 39 |
| Loan of July 1, 1904 | 400 | 00 |
| Int. to Sept. 2, 1904 | 4 | 20 |
| Note of July 7, 1904 | 441 | 35 |
| Int. to Sept. 2, 1904 | 4 | 19 |
| Loan of Sept. 9, 1904 | 200 | 00 |
| | $7,151 | 83 |

"The fact that the loan of $300, made August 19 or 20, 1903, and the loan of $300 made September 8, 1903, were not included on December 17, 1903, when the notes were combined, indicates that the payment of $600, made October 7, 1903, was in payment of the principal of these notes."

Here we find important hearsay evidence as to alleged facts which had not been testified to by John A. Breen or any other person. John A. Breen could not bind the corporation by declarations or admissions unless they accompanied the doing of some authorized act.

If the books had been shown to be correct, and they had all been put in evidence so far as they related to Darling and loans made by him to the company, and notes given by the company to him, and the witness as an expert accountant had been called to give statements of results and combinations, if of figures, and explain the meaning of entries, and the notes had been put in evidence, perhaps the court could properly find that the loans were made, the smaller notes given, and finally combined in the one in question here. But this written statement, standing alone and containing unsworn statements of John A. Breen, and references to books and letters not in evidence, was clearly incompetent and improper evidence. It may be that if John A. Breen had testified to the facts recited, if the letters and notes and all the books had been put in evidence and the results of certain combinations of figures given, the court would have arrived at the same conclusion as did the witness Rice, but, as the case stands, we have a written statement of Rice, of the character stated, standing alone, in the main, and unsupported in many respects by facts proved. The statement may be competent as an argument, but was not competent evidence.

It cannot be regarded by me as a legitimate argument even, for it is not based on the evidence in the case, but on letters and books not proved, and unsworn statements of John A. Breen not shown to have been made when he was transacting the business to which the statements relate. It does not even appear that John A. Breen had any knowledge of the facts to which his statements related. It seems to me that evidence can be produced showing who made the entries; that the books were correctly kept; that Darling had no immediate connection therewith; that the smaller notes can be produced and put in evidence, with all the book entries relating thereto; that the bankbook or books of the company can be produced showing the receipt or deposit of money at the dates claimed, possibly; and that the evidence of the treasurer would show that no payments were made to Darling in satisfaction of the smaller notes, etc. It may take a little time and patience to properly present the actual facts, but this should be done by the best obtainable evidence. Then the referee and court can draw its inferences and conclusions. The note may have been made up and given without any consideration. In the absence of a showing of consideration in the claim itself, the burden is on the claimant to show a consideration, and this must be done by legal evidence. I think the board of directors had power to authorize John A. Breen to sign notes of the company in the absence of the treasurer, and that the note was properly executed if an adequate consideration is shown.

For the reasons stated, the order of Referee Comstock refusing to disallow and expunge the claim is reversed and set aside, and the matter is sent back to Referee De La Fleur to take such legal evidence as may be offered by the claimant showing or tending to show the consideration of the note, the circumstances of its execution and delivery, and also such legal evidence as may be offered by the trustee tending to defeat the claim, and thereupon he will make such order as the facts and law warrant.