## In re ROUDEN MFG. CO., Inc.

### (District Court, E. D. New York. December 22, 1921.)

1. **Bankruptcy ⊃318(2)—Claim for damages for breach of executory contract provable.**

   A claim for damages for breach of an executory contract for services to be rendered to the bankrupt, further performance of which was pevented by the bankruptcy, is provable.

2. **Bankruptcy ⊃92, 328—Court may fix time less than one year for filing of claims; in proceedings looking to dismissal all creditors may be required to prove claims.**

   The provision of Bankruptcy Act, § 57n (Comp. St. § 9641), that claims shall not be proved subsequent to one year after adjudication, is a limitation, and does not preclude the court from fixing a shorter time within which claims must be proved, as in proceedings looking to a dismissal of the petition, as provided in section 59g (Comp. St. § 9643), in which case the court may require all creditors scheduled and notified to prove their claims before the hearing.

In Bankruptcy. In the matter of the Rouden Manufacturing Company, Inc., bankrupt. On review of order of referee allowing claim of Fred Gibson. Reversed.

Francis J. Sullivan, of New York City, for claimant.
Arthur Leonard Ross, of New York City, for appellant.
David Haar, of New York City, for purchaser.

GARVIN, District Judge. Frederick Schwartz, hereinafter described as the purchaser, has brought before the court for review an order of the referee allowing the claim of Fred Gibson in the sum of $1,310, as a general claim. It is contended that the order was erroneous, in that:

First. The claim of the said Fred Gibson is not a provable claim in bankruptcy, because founded upon damages for personal services to be rendered after the adjudication in bankruptcy herein.

Second. The said claim cannot be allowed because the same is barred by an order of a judge of this court, made and entered herein on March 25, 1921, requiring all creditors to prove their claims and file same on or before February 24, 1921.

I assume that these dates appearing in the record are erroneous, and should be February 7, 1921, and February 21, 1921, respectively. On February 7, 1921, the court made an order, based upon the petition of the receiver, directing that a hearing be had before the referee to consider a bid of the purchaser above named for all the assets of the estate, at which hearing any and all other bids therefor were to be considered,

and at which time the referee was directed to make such orders for the acceptance or rejection or other disposition of the bid of said purchaser or any other bid as might seem proper. This order further provided that, on or at any time after the conclusion of the hearing and without further notice to creditors, the court would entertain an application by the petitioning creditors or by the bankrupt for a dismissal of the proceedings in bankruptcy, and directed the bankrupt, all of its creditors and stockholders, the receiver herein, and other parties in interest to show cause why at said hearing or thereafter said bid of said purchaser or such other bid as might seem proper should not be accepted, or why such other order in respect to the assets of the estate, or any part thereof, should not be made as might be just and proper.

The said order of February 7 further provided for publication in a daily newspaper, in this district, of a notice of said hearing before the referee and the object thereof, and for the service by mail, under the direction of the referee, of a copy of said order and of the petition upon which it was granted to all creditors and stockholders of the bankrupt, as the same appeared on the schedules of the bankrupt on or before February 11, 1921, and that no persons claiming to be creditors of the bankrupt, excepting those whose claims appeared on the schedules of the bankrupt as creditors, and whose claims were deemed by the receiver and by the bidder as valid claims, should be entitled, in the event of the acceptance of the said bid, to be paid a percentage of their claims as creditors unless their claims be filed with the referee before the 21st day of February, 1921, and that all persons claiming to be such creditors and failing so to file such claims with said referee should be barred from sharing in the distribution to be made in the event of the acceptance of any such percentage bid by this court.

On or about March 3, 1921, the referee filed a comprehensive report, reciting, inter alia, that a hearing was held pursuant to said order of February 7, and that the bid of the said purchaser was the highest bid offered, that all creditors then present at said hearing voted to accept said bid, and that it appeared to the satisfaction of the referee that said bid should be accepted as in the best interest of the creditors herein. The report recommended that an order be entered for the immediate sale of all assets of the bankrupt to said purchaser, and that each unsecured creditor of the bankrupt, as his claim might thereafter be proved and allowed, should receive from the purchaser 20 per cent. of the amount of his claim. Other recitals and recommendations in said report are not material, except the final recommendation that the adjudication be vacated and the petition dismissed.

On March 5, 1921, the court made an order in effect approving the report of the referee, to which order the attorney for the petitioning creditors, the receiver, the attorneys for the bankrupt, and the attorney for the purchaser consented in writing. The decision of the referee, upon which his order allowing the Gibson claim was made, states that the claim is based upon breach of a contract between Gibson and the bankrupt by which the former was employed as superintendent of the bankrupt's plant for one year beginning June 8, 1920, at a salary of $60 per week. He continued until his employment ceased with the in-

stitution of the bankruptcy proceedings. He was out of employment nine weeks and two days, during which his salary would have amounted to $525. He then, on February 17, 1921, obtained employment at $40 per week, until March 17, 1921. During the latter period he was paid $80 less than he would have received, had he remained in the bankrupt's employ.

The decision states that it does not appear whether Gibson obtained other employment after March 17, and the referee finds that he is entitled to the sum he would have earned, had he been in the bankrupt's employ, from that date until June 8—i. e., for 11 weeks and 5 days, $710. The foregoing various items of damage the referee allows upon the claim for breach of contract. They aggregate $1,315, although for some reason, which is not apparent, the referee has allowed only $1,310. Other errors of computation appear, but, as no objections thereto are raised, it may be assumed that they are considered of no consequence.

[1] So far as the nature of the claim is concerned, it is a provable debt. Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. In that case it is stated:

"Executory agreements play so important a part in the commercial world that it would lead to most unfortunate results if, by interpreting the act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corollary, were left still subject to action for nonperformance in the future, although without the property or credit often necessary to enable them to perform. We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement, within the doctrine of Roehm v. Horst, 178 U. S. 1, 19. The claim for damages by reason of such a breach is 'founded upon a contract, express or implied,' within the meaning of section 63a(4), and the damages may be liquidated under section 63b."

[2] With regard to the contention that the claim is barred, because it was not filed within the time fixed by order of this court, the claim having been originally filed March 19, 1921, section 57n of the Bankruptcy Act (Comp. St. § 9641) provides:

"Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment: Provided, that the right of infants and insane persons without guardians, without notice of the proceedings, may continue six months longer"

—and it was urged and the referee decided that the court had no power to fix a time within which claims against the estate must be proved less than one year after adjudication. By this section claims may not be proved after the expiration of one year, under ordinary circumstances. Had Congress intended to allow creditors in all cases a full year to prove claims, it would seem that the statute would have so provided, for section 59g (Comp. St. § 9643) regulates the proceedings upon the dismissal of a petition, and in no way indicates that such dismissal may not be had until one year after adjudication. Section 57n applies only to an estate that is in process of administration, and is

intended to prevent creditors from attempting to file claims after one year has elapsed, rather than to deny to the court the power to fix a less time, where it becomes necessary so to do in connection with the dismissal of a pending proceeding and the payment of creditors as a result thereof.

Section 59g of the Bankruptcy Law reads as follows:

"A voluntary or involuntary petition shall not be dismissed by the petitioner or petitioners or for want of prosecution or by consent of parties until after notice to the creditors, and to that end the court shall, before entertaining an application for dismissal. require the bankrupt to file a list, under oath, of all his creditors, with their addresses, and shall cause notice to be sent to all such creditors of the pendency of such application, and shall delay the hearing thereon for a reasonable time to allow all creditors and parties in interest opportunity to be heard."

Before the proceeding in the case at bar was dismissed, the court· caused the requirements of this section to be followed, and the creditor whose claim is now in question to be notified, as were all the others. The schedules of the bankrupt, which had been filed February 4, 1921, included the list of all the bankrupt's creditors, required by the statute to be filed.

It is well settled that creditors may be barred from participation in an estate even though their claims are filed within a year. In re Bell Piano Co. (D. C.) 155 Fed. 272, 18 Am. Bankr. Rep. 183; Matter of Eldred (D. C.) 155 Fed. 686, 19 Am. Bankr. Rep. 52; Matter of Coulter (D. C.) 206 Fed. 906, 30 Am. Bankr. Rep. 76. The reasoning of those opinions is applicable, and the court is of the opinion that, as the Gibson claim was not proved within the time set by the court, the learned referee was in error in allowing proof thereof after the petition in bankruptcy had been dismissed.

If these conclusions are correct, it follows that the claim should have been disallowed; and it will be ordered accordingly.