In re L. WENAR MILLINERY CO.

(District Court, N. D. Texas. December, 1923.)

No. 826.

1. Bankruptcy ⬳316(1)—That negotiable instrument does not bear bankrupt's name held not good objection to its proof.

That claim against bankrupt is negotiable and that bankrupt's name nowhere appears on instrument are not good legal objections to its proof, where proof shows it was in fact debt of bankrupt.

2. Bankruptcy ⬳330—Claims must be proven in prescribed manner.

Bankruptcy claims must be proven in manner prescribed by bankruptcy laws, supplemented by general orders and official forms.

**3. Bankruptcy ⚖═328—Statute limiting time for filing claims absolutely prohibits tardy filing, but does not prevent fixing of shorter time.**

Bankruptcy Act, § 57 (Comp. St. § 9641), providing claims shall not be proved subsequent to one year after adjudication, does not preclude court from fixing shorter time, but amounts to more than a mere limitation, and is an absolute prohibition.

**4. Bankruptcy ⚖═328—Claim not filed until 13 years after time therefor held barred, and claimant not entitled to benefit of another's claim.**

Bank having claims against bankrupt, electing to pursue persons thought to be secondarily liable, after failure to collect of them, *held* not entitled 13 years later to make a valid claim against bankrupt, nor could court, pursuant to an agreement, give bank benefit of a contingent claim filed by persons whom bank had first sought to hold liable.

In Bankruptcy. In matter of bankruptcy of the L. Wenar Millinery Company. On review of referee's order allowing fund to be turned over to two claimants. Order reversed.

Holloway & Holloway, of Dallas, Tex., for trustee.

Burgess, Burgess, Sadler, Chrestman & Brundidge, of Dallas, Tex., for petitioning creditors.

Camp & Camp and J. N. Townsend, all of Dallas, Tex., for the order.

ATWELL, District Judge. Upon an involuntary petition, in 1910, the bankrupt was adjudicated. On the 24th of October of the same year A. Goldstein and I. B. Walker filed an unsecured claim for $5,000. That claim asserted that they as individuals, had made a loan of $5,000 with the Union National Bank and placed the same to the credit of the bankrupt, so that a large overdraft, which that bank was carrying against the bankrupt, could be reduced; that this note was made on August 30, 1909, and carried 10 per cent. interest per annum. On the 8th day of April, 1911, A. Goldstein filed an amended proof of such claim, alleging a transfer to him of Walker's interest, and also that "on August 30, 1909, the bankrupt was indebted to the Union National Bank in large amounts evidenced by notes and overdrafts aggregating more than $20,000; that such sum was in excess of 10 per cent. of the capital stock of the said bank, and was in violation of section 5200 of the national banking laws; that at the request of said Walker, who was cashier and general manager of said bank, and for its accommodation, Goldstein agreed to execute a note jointly with the said Walker in the sum of $5,000, to be used when necessary as a means of covering up the exces-

sive loan to the said bankrupt; that the said note was payable on demand, with 10 per cent. interest; that it was distinctly understood and agreed between the said Goldstein and the said bank, acting through the said Walker, and the said bankrupt, that the indebtedness represented by said note should continue as an indebtedness against the Wenar Millinery Company, which should be paid off and discharged by the first moneys deposited with said bank by said company; that thereafter deposits were made by the said company from day to day with said bank, more than sufficient to pay off and discharge the said note, but were by the said bank misapplied for other purposes, or the said bank permitted the same to be misapplied by said millinery company for other purposes; that from August 30, 1909, to on or about December 1, 1909, the millinery company paid to the bank, and the bank received, interest upon the indebtedness represented by said note, without the knowledge or consent of the said Goldstein."

The said proof also alleged that suit had been filed by the said bank against Goldstein and Walker in the state district court, seeking to recover both principal and interest and attorney's fees thereon, and "that the indebtedness represented by said note is in truth and in fact the indebtedness of said Wenar Millinery Company, upon which indebtedness the affiant, Goldstein, is secondarily liable, if at all." The said proof further denied liability upon said note, and then alleged "that the liability of the bankrupt to affiant, Goldstein, is contingent upon the liability of affiant upon said note, which liability is now sought to be liquidated and determined in the suit now pending in the said district court." In the amendment it was prayed that "said claim be allowed in the name of and for the benefit of said Union National Bank, or in the alternative, that the action of the court upon same be delayed and postponed until after the termination of said suit in the district court."

Between the date of the filing of the first claim and the filing of the second claim the trustee, on March 24, 1911, moved to expunge the Goldstein and Walker claim, alleging the invalidity of the said note on several grounds, and especially alleging that the said note had, in fact, been paid; that at the time of the signing of said note as accommodation paper it was agreed by all parties concerned that the deposits thereafter to be made by the millinery company in the bank were to be credited, first, to the payment of this accommodation note before any credit was

made on other indebtedness of the millinery company to the bank.

On April 30, 1923, the Commonwealth Bank, the successor of the Union Bank, and the owner of the note, filed before the referee a claim on the note. It is not an amended claim. It does not refer to any other claim. It sets up that the bankrupt is indebted to it in the sum of $5,500, being the $5,000 note, and charges thereon; that the bankrupt, being greatly in need of funds with which to operate its business, and at that time being greatly indebted to the Union Bank, negotiated, through its agents and officers and directors, Wenar, Goldstein, and Walker, with said Union Bank for the loan; that such amount was credited to the bankrupt's account; that the bankrupt accepted a check for that amount in the usual and customary way; that at the time of making said loan the bankrupt was already indebted to the bank in a large amount, and in fact to the full loaning power to any one individual or corporation, and it was understood and agreed by and between said parties—that is, the bank, the bankrupt, and the said Wenar, Goldstein, and Walker—that Walker and Goldstein should sign said note for the use and benefit of the bankrupt, but that the bankrupt should pay the note, or the indebtedness represented thereby; that the note was executed and the proceeds thereof used under said agreement; that Walker and Goldstein signed said note as the agents of the bankrupt and with its knowledge and consent.

The trustee moved to expunge and reject the claim of the bank: (a) Because it was paid by the deposits; (b) because the suit had been brought in the state court by the bank against the makers, who, in that case, had pleaded the invalidity of the note, and that the same had been paid by the deposits of the bankrupt; that the case reached the Court of Civil Appeals and the Supreme Court, which courts finally held that, if the deposits of the Millinery Company were to be credited on the note, the plea of payment would be good (Goldstein v. Union Bank, 109 Tex. 555, 213 S. W. 584; Goldstein v. Bank [Tex. Civ. App.] 216 S. W. 409); (c) upon a retrial in the state court judgment was rendered for Goldstein and Walker based upon such appellate decisions, and it is now admitted on this argument that an appeal has been taken from that judgment; (d) that the bank never at any time filed its claim in the bankruptcy court until 1923, and that the same is therefore barred by limita-

tion and by the practice and rules of this court; (e) that the bank in 1910 filed its claim for $17,877.65, but elected to pursue Goldstein and Walker in the state court on the $5,000 note; (f) that the trustee moved to expunge the $17,877.65 claim of the bank on the ground of preference and other defenses, and thereafter, on December 20, 1911, upon the application of the trustee, an order was entered authorizing a compromise of all claims of the bank upon payment to it of $1,100, and this payment was made in full settlement of all claims; (g) that the dividends that would have gone to Goldstein and Walker, had their contingent claim become a reality by their having to pay said note, were retained by the trustee under the order of the court until it might be finally determined whether the same should be paid to Goldstein and Walker, or whether the same should be distributed to the general creditors, and that in order to increase the return to the general creditors the attorneys for the trustee took part in the fight between the bank and Goldstein and Walker and assisted in the defense.

1. I do not think that the facts justify a conclusion that in the compromise between the bank and the trustee it was in the minds of any of the parties that the $5,000 item was included. That it would have been subject to the preference alleged against the bank may be conceded, but the fact remains that it is and was outside of that settlement.

[1] 2. The fact that the basis of the claim is negotiable, and that the bankrupt's name nowhere appears on such instrument, might be a good legal objection to its proof, were there no other record in this proceeding that it is, in fact, the debt of the bankrupt. Huffcut on Agency, § 198; 1 Williston on Contracts, § 298; Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, 27 L. Ed. 903; Sanger v. Warren, 91 Tex. 472, 44 S. W. 477, 66 Am. St. Rep. 913. That rule of law must be tempered with an equitable warmness, when its vigor would deprive of exact justice. The record here allows us to make no mistake in stating that the note was, and is, in fact, the debt of the bankrupt. The money went to its account and was used by it. Its creditors received the benefit of it. The machinery set in motion by and operated under the bankruptcy legislation is for the purpose of apportioning the bankrupt's estate to the creditors entitled thereto. The bank, so far as this proposition is concerned, is a creditor. Goldstein and Walker were accommodation signers, and perhaps contingently liable.

[2] 3. Section 57 of the act (Comp. St. § 9641) provides the method for the proof of claims; also for their allowance. Paragraph (n) thereof is as follows: "Claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication; or if they are liquidated by litigation and the final judgment therein is rendered within thirty days before or after the expiration of such time, then within sixty days after the rendition of such judgment. * * * " Claims in bankruptcy must be proven in the manner prescribed in the bankruptcy laws as supplemented by the general orders and official forms. Collier on Bankruptcy (13th Ed.) p. 1125; In re Dunn Hardware Co. (D. C. N. C.) 13 Am. Bankr. Rep. 147, 132 Fed. 719; In re Coventry-Evans Furniture Co. (D. C. N. Y.) 22 Am. Bankr. Rep. 272, 166 Fed. 516.

[3] The limitation provision does not preclude the bankruptcy court from fixing a shorter time (Matter of Rouden Mfg. Co. [D. C. N. Y.] 48 Am. Bankr. Rep. 272, 278 Fed. 663); but it is intended for the benefit of creditors who file their proofs of claim promptly and to give them the benefit of their own diligence, and it was also intended to facilitate the administration and settlement of the estates of bankrupts (Collier on Bankruptcy [13th Ed.] p. 1177; In re Peck [D. C. N. Y.] 20 Am. Bankr. Rep. 629, 161 Fed. 762, affirmed in [C. C. A. 2d Cir.] 21 Am. Bankr. Rep 707, 168 Fed. 48, 93 C. C A. 470). This subsection is more than a limitation of time; it is an absolute prohibition. Bray v. Cobb (D. C. N. C.) 3 Am. Bankr. Rep. 788, 100 Fed. 270; Matter of Bimberg (D. C. N. Y.) 9 Am. Bankr. Rep. 601, 121 Fed. 942; Matter of Bickmore Shoe Co. (D. C. Ga.) 45 Am. Bankr. Rep. 24, 263 Fed. 926; In re Shaffer (D. C. N. C.) 4 Am. Bankr. Rep. 728, 104 Fed. 982; Matter of Blond (D. C. Mass.) 34 Am. Bankr. Rep. 193, 188 Fed. 452; In re French (D. C. Mass.) 25 Am. Bankr. Rep. 77, 181 Fed. 583; In re Knosco (D. C. Ohio) 31 Am. Bankr. Rep. 238, 208 Fed. 201; In re Sanderson (D. C. Vt.) 20 Am. Bankr. Rep. 396, 160 Fed. 278; In re Muskoka Lumber Co. (D. C. N. Y.) 11 Am. Bankr. Rep. 761, 127 Fed. 886.

[4] This line of reasoning makes it impossible to consider the claim of the bank filed 13 years after the institution of bankruptcy. The decisions of the state court hold that the note was the debt of the bankrupt. Therefore the claim filed by Goldstein and Walker, contingently, does not and has not

ripened. They have not been required to pay anything. They cannot voluntarily pay and ask reimbursement of the estate. On the other hand, the facts seem to indicate that the bankrupt deposited with the bank approximately $20,000 immediately after the $5,000 note was executed, which deposits, under the agreement, should have been used, first, for the liquidation of the $5,000 note, and if they had been so used the note would have been paid. Hence a plea of payment is good as asserted in the state court suit.

That there has been an agreement after all these years between Goldstein and the bank for the taking of the money from the bankruptcy court to be credited upon the back of the note does not authorize this court to take from the creditors of the bankrupt any fund for any such purpose. The petitioning creditors, as well as the trustee, are objecting to any such disposition. The bank could have asserted in this court 13 years ago what it is attempting now to assert. It did not see fit to do so. It is suggested that it entered the state court against Goldstein and Walker, knowing that if it secured a judgment against them it would be worth 100 cents on the dollar, while its claim in the bankruptcy court would net it much less. Be that as it may, the fact is that the bank comes here too late, and there is no sufficient pleading to authorize a tying on of its proof to the proof filed by Goldstein and Walker.

Order in accordance.